## INDEX OF EXHIBITS

| Description of Document | | Date | Exhibit Number |
|---|---|---|---|
| BP-390 BOP Staff Recommendation | (Mr. Allen) | 10/25/1991 | 1 |
| BOP Memo   Staff Recommendation | (Mr. Hooks) | 07/07/2003 | 2 |
| BP-148 Request to Staff | (Mrs. Bullard) | 07/11/2005 | 3 |
| BP-148 Request to Staff | (Mr. Jensen) | 08/18/2005 | 4 |
| Response from Case Manager | (Mrs. Ellis) | 01/04/2006 | 5A |
| Informal Attempt at Resolution | (Mrs. Ellis) | 01/23/2006 | 5B |
| Request to Warden | (Mr. Scibana) | 01/30/2006 | 6A |
| Follow Up Response to Warden | (Mr. Scibana) | 02/27/2006 | 6B |
| Response from Case Manager | (Mrs. Ellis) | 03/20/2006 | 7A |
| Letter to South Central Region | (B. A. Rhodes) | 04/25/2006 | 7B |
| Institutional Administrative Remedy 403762-F1 | | | |
| Part A - Inmate Request | | 02/03/2006 | 9A-1 |
| Part B - Response   Page 1 | | 03/01/2006 | 9B-1 |
| Page 2 | | | 9B-2 |
| Regional Administrative Remedy 403762-R1 | | | |
| Part A - Reason for Appeal   Page 1 | | 03/09/2006 | 10A-1 |
| Page 2 | | | 10A-2 |
| Part B - Response | | 04/12/2006 | 10B-1 |
| Central Office Administrative Remedy 403762-A2 | | | |
| Part A - Reason for Appeal   Page 1 | | 04/28/2006 | 11A-1 |
| Page 2 | | | 11A-2 |
| Footnotes to Part A | | | 11A-3 |
| Part B - Response | | 07/25/2006 | 11B-1 |

Exhibits referred to Case Number 06CV01452 EGS

U.S. DEPARTMENT OF JUSTICE                         EXTRA GOOD TIME RECOMMENDATION
Federal Bureau of Prisons

| Institution | | Date | |
|---|---|---|---|
| **USP LEAVENWORTH** | | **October 25, 1991** | |
| NAME (*Last, First, Middle*) | | Number | Assignment |
| **Shiue, Ming S.** | | **00499-041** | **Education** |

☒ Recommend Meritorious Good Time Effective: **July 1, 1991** _____ (The effective date can not

be retroactive any more than three months, excluding the month in which the recommendation is made).

☐ Recommend Termination of Meritorious Good Time Effective: _____ .

☐ Recommend Disallowance of Extra Good Time For The Calendar Month of: _____ .

☐ Recommend Lump Sum Award of _____ Days: Date of act or termination of activity for which the

recommendation is made _____ .

**JUSTIFICATION:**    Shiue has been a cooperative and dependable worker ever since his
        assignment to Education in 1985.  Beside performing his regular duties
        in a responsible manner, he has applied his technical skills in many
        projects that have benefited this department and the institution.
            He was instrumental in upgrading the ENGRAVING Program which
        significantly resulted in improvements to Staff Nametags, Transfer
        Plaques, Special Recognition Awards, Desk Name Plates, and numerous
        Signs.  He also assisted in setting up and operating the GRAPHIC DESIGN
        & PRINT TECHNOLOGY Classes.  In addition, he provides clerical support
        whenever deficiencies occur in that area, handling departmental P.O.'s
        memos, work requests, major equipment justifications, and proposals.
        On a lot of occasions, Shiue has put in extra work hours, in the
        evenings, on weekends, and even holidays, to ensure that jobs requested
        by various institution staff were done on time in order to meet their
        deadline.
            Based on all of the above facts, I strongly recommend that
        Shiue be recognized for his positive actions and contributions.

| Work Supervisor | | Approved By: (*Name*) | |
|---|---|---|---|
| _VT Instructor_ | | | S.O.E. |
| | | Chief Executive Officer or Committee | |
| | | Date | |

Sentry Release Date Adjusted by: _____    Date _____
                                    *Legal Technician Signature*

Original – J & C
Canary – Central File                    Ex  1
Pink – Work Supervisor



U.S. Department of Justice
**UNICOR**
Federal Bureau of Prisons

*United States Penitentiary*
*P.O. Box 1000*
*Pollock, Louisiana 71467*

7 July 2003

MEMO TO:   Inmate Central File/Unit Team File

Reference:  Inmate Ming Shiue, Number 00499-041,
               Unit Team B-4

Inmate Ming Shiue has completed work projects under my supervision here at Unicor, USP Pollock. He has efficiently performed his assigned tasks and improved the safety aspects for inmates working here in Unicor. Inmate Shiue has an excellent attitude towards work, fully cooperates with his peers, very capable of working under pressure and handling multiple tasks. He is very conscientious in all his endeavors as well as trustworthy and intelligent to his co-workers and staff. Inmate Shiue sets an example for others to follow. Inmate Shiue has been positive, dependable and hard working.

Projects completed by Inmate Shiue's include the following aspects of his job skills.

    a. Produced custom labels for Unicor Files, records and Binders thus improving factory efficiency.
    b. Made uniquely colorful information signs for Unicor Machinery, i.e., Cutting Tables.
    c. Designed special safety warnings and notices throughout the institution, including Unicor.
    d. Printed mass quantities of forms and booklets for Commissary, Correctional Services, Education, Laundry and Recreation saving time and money.

Anthony Hooks
Fabric Supervisor
UNICOR, Pollock, Louisiana

*Ex 2*

BP-S148.055 **INMATE REQUEST TO STAFF** CDFRM
SEP 98
**U.S. DEPARTMENT OF JUSTICE**                    **FEDERAL BUREAU OF PRISONS**

| TO:(Name and Title of Staff Member) Mrs L. Bullard, A.H.S.A. | DATE: July 11, 2005 |
|---|---|
| FROM: Ming Shine | REGISTER NO.: 00499-041 |
| WORK ASSIGNMENT: McM-B Orderly | UNIT: M03-127 LH |

SUBJECT: (Briefly state your question or concern and the solution you are requesting. Continue on back, if necessary. Your failure to be specific may result in no action being taken. If necessary, you will be interviewed in order to successfully respond to your request.)

1. Are any Federal Institutions in Minnesota listed to accept care Level II inmates?

   a) FCI Waseca?        b) FMC Rochester?        c) FCI Sandstone?

2. If so, Would you please recommend me for designation to one in Minnesota when the processing of Care II Medical Transfers occurs. I'm requesting this consideration because during the past 25 years, I've never been placed anywhere near my home state and would like a reasonable chance to visit with my family! My custody should drop to LOW this August.

(Do not write below this line)

DISPOSITION:

Speak with you unit Team.

| Signature Staff Member AHSA | Date 7/18/05 |
|---|---|

*Copy 1 of 2*                    *Ex 3*

BP-S148.055 **INMATE REQUEST TO STAFF** CDFRM
SEP 98
**U.S. DEPARTMENT OF JUSTICE**                    FEDERAL BUREAU OF PRISONS

| TO: (Name and Title of Staff Member)<br>Mr. G. Jensen, Case Manager | DATE:<br>August 18, 2005 |
|---|---|
| FROM:<br>Ming Shiue | REGISTER NO.:<br>00499-041 |
| WORK ASSIGNMENT:<br>M-8 Orderly | UNIT:<br>M03-127 LH |

SUBJECT: (Briefly state your question or concern and the solution you are requesting.
Continue on back, if necessary.  Your failure to be specific may result in no action being
taken.  If necessary, you will be interviewed in order to successfully respond to your
request.)

Please provide a copy of my UPDATED Classification (Custody)
Form.  I shall be placed for a Care II Medical Transfer
soon.  My Base should be 10 with a variance of -2 or -3
placing my security total in the 7-8 point range thus
making my Scored Level a LOW.
On that basis, I request designation to either FCI Waseca
or FMC Rochester because during the past 25 years, I
have never been located anywhere near Minnesota. I
desire to receive visits from my family especially since I now
qualify for one of those home State Institutions! I greatly
appreciate your assistance on this matter of Significant importance.

(Do not write below this line)

DISPOSITION:

| Signature Staff Member | Date |
|---|---|
| | |

Record Copy - File; Copy - Inmate
(This form may be replicated via WP)    *Ex 4*

This form replaces BP-148.070 dated Oct 86
and BP-S148.070 APR 94



INMATE REQUEST TO STAFF MEMBER

SHIUE, Ming                                                      January 4, 2006
Reg. No.: 00499-041 (C)

In your Inmate Request to a Staff Member, you indicate you wish to know what supporting
fact(s) were used to justify the application of a "Greater Security" management variable
applied to your BP-338 (Custody Classification Form).

P.S. 5100.07, Security Designation and Custody Classification Manual, Chapter 7, page 13, § V
"Greater Security" states,

> **In circumstances where an inmate represents a greater security risk (i.e.,
> pending charges, detainer, escape risk but no DHO finding, etc.) than their
> assigned security level, they may be placed in an institution outside normal
> guidelines, and this Management Variable shall apply.**

Specifically in your case, you presently have a detainer for 2nd Degree Murder committed in
Minnesota in conjunction with your instant federal offense which is not reflected on your BP-
338. This detainer remains active until 2007. Further, during your trial on the instant offense,
you took your victim hostage and held her captive with a knife. During the time you held her
captive, you used the knife to cut your victim's face. Although the 2nd Degree Murder detainer
alone would warrant the application of greater security, the hostage taking during your trial
further represents to staff you require greater security than that which can be provided at a low
level facility.

Based upon the quoted criteria, unit staff are fully justified in the application of a "Greater
Security" management variable. Should you have further questions concerning this matter,
please feel free to stop by my office to discuss them.

J. Ellis, Case Manager

Ex 5a

INFORMAL ATTEMPT AT RESOLUTION

To: J. Ellis, Case Manager
From: Ming Shiue
Date: January 23, 2006
Reg. Nbr: 00499-041

Since I have not received the documents detailing issues on my security requested January 7, 2006 from you, I will address the known facts you did state in your January 4th response to me.

The conclusion arrived was based on a very selective and narrow slice of my entire history. To state my criminal offenses a quarter century ago still represents to staff an active, predictive danger now is questionable and incomplete with no further proof or links. Claimed is the nature of my past violence, graphically protrayed continues unabated for 25 years to remain an ongoing threat. How can that be true with so much on record countering such opinion. Realistically, circumstances along with a person's character will and does change especially after such a long time.

The attack on victim during trial was desperate attempt to stop testimony and avoid prosecution. Since conviction and sentencing occurred the cause to eliminate witnesses ceases to matter, so situation to harm anyone no longer exist. The aberrant events can never happen again thus what factor do all the obsolete criminal acts have to do with "greater security" concerns Today? A reconsideration is warranted based on current and more significant facts.

1. After 1981 there has been peaceful acceptance of punishment for crimes committed as clearly proven by my exceptional long term behavior and institutional record. The duration of incarceration also deter me from ever committing future crimes since experiencing the certainty of society's retribution.
2. Age factor (over 55), medical conditions (Chronic Care level 2), and resulting physical disabilities, all reduce any likelihood and capability to do violence.
3. While denied early parole, present sentence does mandate release after 30 years. With the 2/3 record review for "Mandatory Parole" approaching, that is a powerful incentive to keep already vested 26 years of good conduct intact. Even without a parole date at this point into the sentence, there is no danger of my doing anything to jeopardize probable release in 2010. You can see the undeniable logic i0 that.

As for the Sentence Detainer not reflected on BP-338, the controlling issue is it will expire next year (2007). With the brief term left on the Minnesota sentence, what possible security alarms does that raise? If some years still remains there might be an issue but at this late stage, that detainer becomes a moot point.

From the logical reasons presented along with more relevant history refuting the initial conclusion "my long past offenses still represents greater security concerns," request is made again that the management variable application be rescinded.

Objectively, my placement now at a low level facility will not be a risk at all but a positive step towards preparing me for reintegration back into society someday.

EX 5 b

To: J. Scibana, Warden                                   Date: January 30, 2006

From: Ming Shiue            Reg. Nbr:  00499-041          Unit:  C

    Kindly grant your executive oversight authority to resolve this petition. Informal resolutions were tried numerous times but reversals are rare.  My scored security dropped to Low finally after many years but a "greater security" management variable was immediately lodged.

    First inquiry why, response was "lack of parole date affects your sentence length." When informed P.S. 5100.07 specifically address such [my time left is under the 20 year PSF criteria], two different facts were used.  Neither logically support "greater security risks," particularly by selectively viewing past history to define present character.

    Claiming my quarter-century crimes still represent to staff a danger is taking precautionary measures to extreme excess.  Deciding my violence continues unabated 25 years to remain a present threat is not justified lacking further substantiation.  A man as well as his circumstances can and does change after a long period of time.

    Regarding the attack during state trial, motive then was desperate attempt to silence testimony, my denial in facing justice and punishment.  With conviction and sentencing done, witnesses testimony no longer matters so cause to harm anyone ceases.  That situation and aberrant offenses can never occur again so ending any purpose to commit crimes today.

    More significantly are current reasons and more relevant facts supporting low security.

1.  Since then, there has been acceptance of responsibility for crimes committed and reconciliation towards doing sentence peacefully and constructively as proven by my exceptional institutional record and behavior.  The lengthy duration of incarceration has deter me from ever committing future crimes having experienced the certainty of society's retribution.

2.  Age factor (55), medical conditions (Chronic Care level 2), and resulting physical limitations, all but eliminate the likelihood or capability to do violence.

3.  With my 2/3 or 30 year record review for "Mandatory Parole" approaching, there's even greater reason why no danger exists for my doing anything to jeopardize release in 2010 after already vesting 26 years of good conduct!

    As for the Minnesota sentence detainer not reflected on BP-338, the controlling issue is **it will expire next year** (2007).  With so brief term left on detainer, what alarms of "greater security" can there be at a sentence's end phase?

    Objectively my placement at a low level facility now will not be a risk at all but another step towards evaluating my changed nature.  I humbly implore you for the opportunity which was earned within policy to prove my suitability for eventual reintegration back into society.  Please rescind my management variable assignment.

Ex 6a

·To: J. Scibana, Warden                           Date: February, 27, 2006

From: Ming Shiue          Reg. Nbr:  00499-041          Unit:  C

    The answers provided by Mr. Campbell, AW(I & E), February 14th, to my earlier plea for your assistance still does not address the **vital underlying issue** for Unit Team's adverse determination to raise my security.

    In his response, mention was made of another misconduct during pretrial detention where a vent hole was poked around window seal cause the homemade candle was fouling air in cell.  To link additional old incidents as need for "greater security" today is the same inferential rational staff have been basing its action upon in every reply. All their **conjectures** require broad leaps of assumptive logic, doesn't show "good cause" or explain with clarity how my distant negative history warrant higher risk assessment now.

    As is also in record, the final misbehavior not listed was my involvement in a scam plot instigated by jailhouse informant Green to eliminate witnesses.  I raise that in order to point out this.  Every past offense used to buttress staff's conclusions so far happened 25 years ago, before my convictions or subsequent imprisonment.

    Since then, because I accept responsibility and society's retribution for my crimes, I have no longer any reason to commit further ones which is why there is a distinct lack of recent evidences or relevant facts to be relied upon.  My decades long period of exceptional behavior should not be ignored without recognizing my changed nature.  As I am in the end phase of my sentences, I certainly do nothing (escape or violence) at this late stage.  Yet staff maintains this "greater security" facade by citing perceived risk when none actually exists.  **Why ?**

    Stated but never admitted as true **motive for Staff's inordinate decision is** the understandably **abhorrent reaction to the repugnant crimes I was convicted of.**  Due to the loathsome aspect of my case (murdering a young witness), **there always was and will continue to be impetus to apply the harshest and most severe determination in any discretionary judgement towards me.**  The only reason this management variable regulation was invoked is to keep me at higher security (effectively ending favorable parole considerations) since all the objective criterias such as PSF or points no longer can.

    To cover staff capricious decision, **inferential conjectures** about my decades old crimes are gleaned from narrow portion of my mainly favorable history, is then recycled to represent continuing security threat as shown in all documented responses.

    I recognize my cause is not a sympathetic one which is why few staff will ever review me justly but even repulsive cases deserve an aura of fairness and due process. I beseech you to make a undoubtfully difficult and disgusting ruling but a necessary one -- overturning misuse of the management variable option in my situation.

*Ex 6b*

## INMATE REQUEST TO STAFF MEMBER

SHIUE, Ming                                                              March 20, 2006
Reg. No.: 00499-041 (C)

In your Inmate Request to a Staff Member, you indicate you wish copies of the following documents: Recent progress report from initial team; sentence computation including extra good time totals; and, 409 - Request for Transfer/Application of Management Variable Form

A copy of the your program review which was provided to you after your initial classification at this facility is attached. Further, a copy of your sentence computation and your Sentence Monitoring Good Time Data is also attached.

The application of the management variable "Greater Security" was completed by the South Central Regional Office. As the application was done in conjunction with your transfer, no request for placement of the management variable is required.

Should you have further questions concerning this matter, please feel free to stop by my office to discuss them.

J. Ellis, Case Manager

*Ex 7a*

Federal Correctional Institution
P.O. Box 1500
El Reno, OK   73036-1500

April 25, 2006

B. Rhodes, Bureau of Prisons
South Central Regional Office
4211 Cedar Springs Road   Suite 300
Dallas, TX   75219

Dear B Rhodes:

You were the signing official on my BP-10 (Case Number 403762-R1)
response dated 4-12-2006, so this related inquiry is directed at you
in the hope you will know the answer.  Since P.S. 5100.07 Chapter 7
page 9 states "Management Variables" can only be applied or approved
by Regional Authority or higher, my question is this:

**Who** applied the "Greater Security" requirement on my record and
**When** was that action done?

I was never informed such decision was even made until afterwards
when I requested a security score update.  Previous BP-338 (2004) show
MGTV: NONE which is why I want to find when did the change occur and
who was the deciding authority.

Institution request for copy of EMS 409 "Application of Management
Variable" form was answered with reference to your office.  See
paragraph 3 of attached March 20th reply from the case manager.

Please respond to my simple request.  Your prompt answer would
be greatly appreciated.

Sincerely,

*M. Shue*

Ming Shiue

00499-041

*Ex 7b*

cc

Administrative Remedy (BP-9) Attachment

Name: <u>Shiue, Ming S.</u>        Reg. Nbr: <u>00499-041</u>        Unit: <u>C</u>    <u>FCI El Reno</u>

The Action increasing my security level (applying "greater security" management variable in BP-338) as soon as my points dropped to Low was capricious abuse of discretionary power. There is no <u>rational basis</u> in record for staff conclusion embodied in its partial statements of supporting facts. The explanation as to the specifics of case manager's decision as provided in responses of January 4 and 10, see exhibit A & B, were faulty or based on wrong assumptions. The exact issues contested were clearly stated in more recent documents of January 23 & 12, see exhibit C & D. Those case specific issues were never addressed in the denials of January 25 & 31, see exhibit E & F.

**Please now respond to these relevant issues:**
1. Use of a sentence detainer not reflected on BP-338.
   a) The controlling factor in the Minnesota sentence detainer is **it will expire next year**. With so brief of term left on detainer, **what concerns for "greater security" does that raise at sentence's end stage?**
2. Use of past violence (attacking victim during trial) to still claim "represents to staff you require greater security."
   a) How does my **quarter century ago offense** confirm staff's determination of a predictable danger today? By asserting my criminal nature continues unabated for 25 years to remain an ongoing threat only shows <u>excessive reasoning</u> and <u>rash judgement</u> especially when **no pattern of any crime or violence has occurred since.**
   b) Linking distant history to current security concerns is contrary to and conflicts with bureau's official rational on such relationship as conceptualized in security classification program statement 5100.07 chapter 8, page 16.
   c) Many reasons favoring "Low Security" status now, such as: 1) Old Age; 2) Medical conditions and limitations; 3) Motives, not jeopardizing parole eligibility; 4) reciprocal victimization in "greater security" institution; and 5) release and family ties issues; were all disregarded making staff decision completely biased and unbalanced in one direction only.
   d) The serious and onerous consequence in denying my placement at low level facility based on my long past violence creates a discriminatory condition when other inmates with violent pasts were permitted. By allowing such situation (letting staff's subjective opinion choose which inmates with violent past qualifies or not) violates the equal protection component as well as "protected liberty" interest of the Fifth Amendment.

3. Why was my percentage of time served arbitrarily changed from 76-90% range (been scored that way since 2004) to lesser 26-75% when Projected Release Date is still the same? This downgrading was staff <u>capriciously</u> <u>assuming</u> 40 year sentence for me in total dismissal of Federal stature 18 USC 4206(d) and Regulations 28 CFR 2.53 which <u>mandates</u> an 2/3 or 30 year Projected release(satisfaction) date for old law life sentences.

It is requested my BP-338 be properly rescored and the "greater security" management variable removed or updated with a management variable expiration date equal to the sentencing detainer inactive date.

REQUEST FOR ADMINISTRATIVE REMEDY

Case Number: 403762-F1

Part B - RESPONSE


This is in response to your request for administrative remedy,
in which you request the Management Variable for greater security
be removed from your custody classification form.  Specifically,
you state due to your lengthy incarceration, medical needs and
impending parole consideration, the Management Variable for
greater security no longer applies.

On October 29, 1980, you were found guilty in the District of
Minnesota of kidnaping which included forced sexual assault.

During your instant federal offense you also kidnaped and
murdered a 6-year-old boy.  Additionally, during your pretrial
detention, you were observed tampering with the window in your
cell.  During the subsequent search, contraband such as screws,
a lead pencil with a flattened metal eraser holder, a homemade
candle in a styrofoam cup with a plastic cover and other articles
were found which you were using to dig into the wall around the
window.

Program Statement 5100.07, Chapter 7, Security Designation and
Custody Classification states, "there may be security concerns
which are not adequately reflected in the classification scheme.
In circumstances where an inmate represents a greater security
risk than their assigned security level, they may be placed in
an institution outside normal guidelines, and the Management
Variable of greater security shall apply.  Management variables
are applied to reflect and support the professional judgement of
Bureau staff in order to ensure placement in the most appropriate
security level institution."

Based on the above and in compliance with policy, your unit team
has carefully reviewed your custody classification form, and has
determined the Management Variable of greater security is
appropriate.

Finally, you believe that the percentage of time served on your
custody classification form has been miscalculated.  You were
committed to the Bureau of Prisons on March 17, 1981, with 114
days of jail credit.  You have served approximately 307 months of
your sentence.  Your projected release from confinement is
July 6, 2010, via two thirds release.  If released on that date,
you will have served approximately 360 months.  As a result, you
have served approximately 85% of your projected sentence.  Your
custody classification form has been updated to reflect the
correct percentage of time served.

9B1

Based on the foregoing, your request for administrative remedy is
denied.  In the event you are dissatisfied with this response,
you may appeal to the Bureau of Prisons, South Central Regional
Office, at 4211 Cedar Springs Road, Suite 300, Dallas, Texas
75219.  Your appeal must be received in that office within 20
days of the date of this response.

for _____        _3-1-06_____
Joseph Scibana, Warden                          Date

982

U.S. Department of Justice                              **Regional Administrative Remedy Appeal**
Federal Bureau of Prisons
                                    **Certified Mail** 7099 3220 0001 8931 4796

Type or use ball-point pen. If attachments are needed, submit four copies. One copy of the completed BP-DIR-9 including any attachments must be submitted with this appeal.

| From: | SHIUE, MING S. | 00499-041 | C | FCI El Reno, OK |
|---|---|---|---|---|
| | LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |

**Part A—REASON FOR APPEAL**

Neglected by institution remedy #403762-F1 denial is continuing failure to respond on "capricious abuse of discretion" issue (see exhibit C, E & F) when staff, lacking "good cause" exaggerated need to increase my security from LOW. Cloaking speculative action under color of authority with disproportionate consequences does not confirm agency unlimited discretion or elude due process responsibility just because policy allows means to do so. To cover prejudicial decision, adding management variable to my record, selected past history suddenly was interpreted to perceive a "greater security" scenario.

. . . Continued on Attachment ( 1 letter-sized) page (2 copies provided) along with BP-9 and exhibits A, C, E, & F (B & D not relevant now)

| March 9, 2006 | _Ming Shiue_ |
|---|---|
| DATE | SIGNATURE OF REQUESTER |

**Part B—RESPONSE**

| | |
|---|---|
| DATE | REGIONAL DIRECTOR |

If dissatisfied with this response, you may appeal to the General Counsel. Your appeal must be received in the General Counsel's Office within 30 calendar days of the date of this response.

ORIGINAL: RETURN TO INMATE            _10-A1_            CASE NUMBER: 403762-R1

**Part C—RECEIPT**

                                                        CASE NUMBER: _____

Return to: _____  _____  _____  _____
           LAST NAME, FIRST, MIDDLE INITIAL          REG. NO.      UNIT     INSTITUTION

SUBJECT: _____

Administrative Remedy (BP-I) Attachment                    Case Number: 403762-R1

Name: Shiue, Ming S.          Reg. Nbr: 00499-041      Unit: C      FCI El Reno, OK

The chosen **facts used** to buttress adverse finding **requires:**
1. **Broad leaps of inferential logic;** --Case example - you did misdeeds 25 years ago - while no continuing proof exists - we can predict you will still do wrong today - so on that assumptive danger, policy allows us to label you a threat. --
2. **Conjectural Assertions;** -- A person's nature or circumstances never changes - once a criminal - always will continue to commit crimes. -- **and,**
3. **Total suppression of more evidences favoring contrary** "less security" **ruling;** -- at end phase of both sentences - old age - medical and health liabilities - clear motive to behave due to parole eligibility.

Staff **conclusions stemmed from** these obsolete **incidents:** a) attacking witness during testimony; b) making vent hole in window seal cause candle smoke fouled air in jail cell; c) scam plot by jailhouse informant to eliminate witnesses. Those acts of desperation were initial refusal to face justice and punishment **prior to sentencing** and **imprisonment.**

Since then, because I accept responsibility and society's retribution for my crimes along with reconciling never to commit further ones -- **there's been a quarter century** of exemplary **proof confirming my changed nature.** Yet staff persistly recycle such incidents that necessitates **inferential logic** and **conjectural assertions** that reflects **irrational** and **unprofessional judgement.** Still Agency maintains this "greater security" facade when no risk exists. **WHY?**

Hinted but never admitted as real cause **for staff decision is** the understandable **abborrent reaction to the repugnant crime I was convicted of.** Due to the loathsome aspect of my case, **there always was and will continue to be harsh and spiteful bias in any discretionary judgement towards me.** To disallow Low designation I now earned within policy a subjective-based regulation was invoked to prevent rehabilitative benefits since all the objective criterias(P.S. 5100.07 Chapter 7 Page 7) such as PSF and points no longer can! This "greater security" labeling scheme effectively ends my parole release [protected liberty interest] while keeping me at more dangerous environment [safety interest]. A reasonable doubt of impartiality can be made for this situation (P.S. 3420.09 Section 9 subsection c part 7).

The only applicable example from P.S. 5100.07 regulation that had any legitimacy is my Minnesota sentence detainer not reflected on BP-338. **Since that detainer will end next year the proper procedure,** which was not followed (EMS A409.05 form) **for handling such is to assign a Management Variable expiration date equal to the sentence detainer Inactive date** (in my case July 9, 2007). Further indicators of vindictive decisions against me is the arbitrary changing of my Percent of Time Served downward(Allegedly corrected) and the reduction in responsibility scoring to "average" when for long period it was rated "good."

Clearly **lacking** in Agency rejection **is vital** "good cause" **explination** - showing with clarity as to be understandable - just **how** my **distant history** - absent **negative indicators** for decades - **warrant determination for higher risk now.** Avoiding to respond to specific issues raised (required under 28 CFR 5212.11.4) while contradicting Bureau's stated reason conceptualizing relationship to histories (P.S. 5100.07 Chapter 8 page 16), shows failure to follow agency's own rules thus judicially reviewable under statute (5 USC 702).

My case is not a sympathetic one which is why very few staff will consider this appeal strictly on merit but even repulsive cases ones deserve an aura of fairness and due process. Dispassionate review should recognize this difficulty and overturn the "capricious abuse of discretion" and remove the management variable from my record.

*10 A2*

Third Copy                                              March 9, 2006

SHIUE, Ming          Reg. No. 00499-041       RECEIPTED: 03-13-06

403762-R1            PART B-RESPONSE

You are appealing the Warden's response to your request for
removal of the Greater Security Management Variable applied to
your Custody Classification.  You contend this is a capricious
abuse of discretion by staff and request the Management Variable
be removed from your record.

We have thoroughly reviewed your appeal.  Program Statement
5100.07, Security Designation and Custody Classification, states
the intent of the security and custody classification system is
to allow staff to use professional judgement within specific
guidelines to determine the most appropriate institution
assignment for an inmate.  The system allows staff to ensure all
characteristics of an inmate's case are considered in decisions
regarding security and custody classification.  Management
variables provide a means for staff to document the basis for
assigning an inmate to an institution which is not consistent
with the security level on the Custody Classification form.

A review of your records indicate you are serving a life sentence
for Kidnaping and a concurrent 40-year state sentence for Second
Degree Murder.  During your offense, you kidnaped a woman and her
eight-year-old daughter at gunpoint and held them both hostage
for a period of seven weeks.  During this time, the victims were
frequently kept in a closet, bound, and gagged.  The woman was
repeatedly sexually assaulted, with many of the assaults
videotaped.  On the same day you kidnaped the woman and her
daughter, you also kidnaped and murdered a six-year-old boy.
Your history demonstrates a propensity for violence and the need
for greater security.  The Management Variable applied in your
case is appropriate.

Based on the above information, your appeal is denied.

In the event you are dissatisfied with this response, you may
appeal to the Bureau of Prisons, Administrative Remedy Section,
320 First Street, N.W., Washington, D.C. 20534.  Your appeal must
be received in that office within 30 days from the date of this
response.

_4-12-06_____        _J. my B. A. Rhodes_____
Date                         for G. Maldonado, Jr.
                                 Regional Director

**SENSITIVE - LIMITED OFFICIAL USE**

*10 B 1*

S. Department of Justice

Federal Bureau of Prisons

**Central Office Administrative Remedy Appeal**

**Certified Mail**   7099 3220 0001 8931 4802

Type or use ball–point pen. If attachments are needed, submit four copies. One copy each of the completed BP–DIR–9 and BP–DIR–10, including any attachments must be submitted with this appeal.

| From: | SHIUE, MING S. | 00499-041 | C | FCI El Reno, OK |
|-------|----------------|-----------|---|-----------------|
| | LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |

**Part A—REASON FOR APPEAL**

Region's prerogative imposing "management variable" sanction against earned Low security benefits in this instance is: irrational; capricious selective enforcement of Bureau policy;[1] and violation of constitutional law by flawed peremptory manner deprivation was made. Complaint is misuse of discretionary privilege compounded by misconceived dictum.

   . . . Continued on 1 attachment page

       (3 copies provided) along with

       BP-10, BP-9 and exhibits A,C,E,F & G

      **Bold Numbers** (footnotes) refers to legal authority

      or supplemental facts in exhibit page G.

| April 28, 2006 | | _Ming Shiue_ |
|----------------|--|--------------|
| DATE | | SIGNATURE OF REQUESTER |

**Part B—RESPONSE**

| | | |
|--|--|--|
| DATE | | GENERAL COUNSEL |

ORIGINAL: RETURN TO INMATE

CASE NUMBER: 403762-A1

- - - - - - - - - - - - - - - - - - - - - - - - - - - *// A-1* - - - - - - - - - - - - - - - - - - - - - - - - - -

**Part·C—RECEIPT**

CASE NUMBER: _____

Return to: _____

| | LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |

SUBJECT: _____

| | DATE | | SIGNATURE OF RECIPIENT OF CENTRAL OFFICE APPEAL | BP-231(13) |

Part A--REASON FOR APPEAL

I.  The fact-in-issue is rationality of persecuting "greater security" charge on: elderly, model inmate; who's in end phase(86%) of sentence; and with chronic medical problems 2]; **CAN NO LONGER REPRESENT ANY THREAT**! Classification basis, linking threads of suppositions from obsolete history to perceive broad, inferential risks 3], while suppressing counter-vailing truths, is too weak to "demonstrate a rational basis for their distinctions."(Case Law)4] Crimes committed 25 years ago cannot sustain "propensity for violence" accusation when scaled against 25 years of exemplary peaceful behavior and non-alarming record since proving changed character.  Conclusions relied solely on opinions and feelings.

Improper findings included were undue prejudicial factors 5] having no legitimacy to penal management or stated program objectives 6].  How does the age of murdered victim and other inflammatory cruelties portrayed imperil institution security and order any more at Low level than at higher one?  **Any connection is illogical and absurd**!  Recycling past abhorrent details only show that calm reasoning was abandoned in favor of emotional judge-ment to mete out specialized punishment 7] under color of policy discretion 8].

II.  Asserting "propensity" with decades old violence as predicate, is speculative and conflicts with Bureau's established relationship between past history and present concerns. 9] Risk assessment primarily is timeline correlated with "prediction of serious misconduct" 10] (to protect staff and inmate) intrinsically linked to proper conduct duration.  This concept is operationally apparent in many policy charts 11].  Violence under 5 years is scored as highest risk while over 15 years is rated negligible.  In stretching policy limits to still state 25 year old acts affirm great risks, contradicts own research analysis 10] to enhance appearance of capriciousness 12].

Policy also stated **"All** characteristics of an inmate's case are considered in decisions." Scrutiny reveals **only one aspect of distant history was considered**!  More accurate qualities summarily ignored were present capabilities 2], motives 13], and expiring sentences. Selectively deviating from policy rules when it is convenient further reflects abuse of discretion 14] in this case.  Discrimination was transgressed but space precludes review.

III.  In not providing notice of **security enhancement,** with no advance opportunity to object and confront evidences 15] BEFORE loss of benefits(property interest) 16], is violation of due process under 6th Amendment.  Similar rights of prior notification were granted to CIM 17], Special Offender 18], and custody level 19] claims.  No equivalency process is afforded "greater security" designee 20], forcing placement at higher threat prisons that endangers life and safety.  This deprivation of personal safety infringe on historically recognized "liberty interest" protected substantially by 5th Amendment 21].

By restricting me indefinitely 24] that impinge on the nature and duration of confine-ment prepetually, treads on unusual punishment (8th Amendment) that cannot be reasonably justified.  The MVED(expiration) should be stated to equal the state's sentence detainer inactive date in BP-338 form.  Further non-compliance with policy.

Expecting in-house appeal to satisfy due process and equal protection requirements is tenuous at best.  Fact 25] and statistics will bear that no or so few "greater security" complaints were overruled once applied.  The flaw with giving notice **after** decision was made creates dead situation where subsequent appeals will be treated in **pro forma** manner. Misconstrued judgement once entered as case here require neutral forum for fair and impartial resolution.  It now remains self evident if further reviews actually can resolve administrative injustice.

The relief sought is not exceptional nor extraordinary.  Reversal will not result in immediate release, shorter sentence, minimum status or even lower custody.  Removal of management variable simply will restore my record still delimited by Public Safety Factors to the objective based criteria that all inmates enjoy.  To discriminate my case when there is no longer any threat or endangerment to anyone after all these years is unjust. Correction is needed.

**II A 2**

1.  Program Statement 5100.07 "Security Designation and Classification" Manual herein referenced as "Policy" in this appeal.

2.  Medically designated as Chronic Care 2. Deterioating health from bad kidney (renal insufficiency) with medical liabilities of extreme hypertension and stroke risk requiring 7 prescription agents to control. Physical limitations from disabling arthritis include limited mobility and range of motion in all joints.

3.  See Case Example stated by paragraphs 1 & 2 on BP-10 Attachment page. Same unsound reasoning is evident in Regional reply. Region's presumption is once a violent crime is committed, he will remain violent(propensity) forever. Time and circumstance will never change a person's characteristic is the operating dicta.

4.  748 F2d 787, 622 FS 1470, and 53 LEd2d 640, 648  Court rulings requiring classification be rationally based.

5.  BP-10 Part-B Response  Paragraph 3

6.  Policy  page 1 section 2 c. Inmates and staff will live and work in environments made safer by objective inmate classification guidelines applied with sound correctional judgement.

7.  901 F2d 1504 & 60 LEd2d 447  "intent to punish" framework. A court may infer an intent to punish when there is no such reasonable relation.

8.  BP-10 Part-B Response  Paragraph 2

9.  Policy Chapter 8 page 16 states: "...(his history is further in the past), therefore, lowering the inmates security level and decreasing his custody."

10.  Policy  page 3 section 5 goal of Classification Workgroup and research analysis by Office of Research and Evaluation created operating principles system rely upon.

11.  Policy Chapter 8  Tables 8-4, 8-5, 8-7, 8-8 and 8-10.

12.  545 FS 1121  Court's function limited to determining whether prisoner had been dealt with in manner free of arbitrary and capricious treatment.

13.  With parole review pending, there is no possibility of jeopardizing 26 years of vested exceptional institutional adjustment with escape or violent acts.

14.  531 F2d 460  Judicial review granted only upon showing discretion exercised in manner as to constitute abuse or caprice.

15.  See Section I & II this BP-11 Appeal. Issue raised never addressed in previous thorough and careful reviews.

16.  408 US 599-603 & 408 US 577  Such property interest entitlements is evident in 18 USC 4081 as promulgated by Policy language which mandates "segregation" of inmates by security and custody levels. See relationship to footnote 21.

17.  Through BP-340 Notification of Central Inmate Monitoring

18.  383 FS 346  Procedural protections mandated for the Special Offender program.

19.  Policy Chapter 8 page 22.

20.  EMS-A409.051 may be entered but since it is on staff computer system(groupwise), inmates never have access to that information. I was never told who or when assigned my management variable. See Case Manager's Reply – March 20, 2006 Paragraph 3.

21.  73 LEd2d 28 & 107 LEd2d 7  Supreme Court affirming personal safety as liberty interest.

24.  Policy  page 15 Table 7-3  No expiration date listed in MVED section of my BP-338.

25.  Newsletter article by former BOP employee explaining how Appeals are really handled.

**Administrative Remedy No. 403762-A2**
**Part B - Response**

This is in response to your Central Office Administrative Remedy
Appeal in which you claim the application of a Greater Security
Management Variable (MV) to your Custody Classification Form is
discriminatory since you are no longer a threat or endangerment
to anyone.  You request removal of the Greater Security
Management Variable (MV).

The issue raised falls within the authority of the Warden and the
Regional Director per Program Statement (P.S.) 5100.07, Security
Designation and Custody Classification.  The intent of P.S.
5100.07 is to allow staff to use professional judgment in
decisions involving custody classification.  P.S. 5100.07 states
that in circumstances where an inmate represents a greater
security risk (i.e., pending charges, detainer, escape risk but
no DHO finding, etc.) than their assigned security level, they
may be placed in an institution outside normal guidelines, and
the Greater Security MV shall apply.

Staff determined you required greater security than what is
afforded at a Low security facility.  This decision was based on
the violence displayed during your instant offense that
is detailed in the Warden's response.  Consequently, a Greater
Security Management Variable was applied to your Custody
Classification scoring.  The Management Variable of Greater
Security justifies housing you in an institution not consistent
with your security level.  We do not find, nor have you provided,
any evidence of discrimination with regard to this matter.  We
concur with this decision and find it in accordance with policy.
P.S. 5100.07 does not entitle you to a particular classification
or custody level.  Your Unit Team will continue to review your
custody classification during regularly scheduled program
reviews.

Your appeal is denied.


_7/25/2006_
Date

_Harrell Watts, Administrator_
National Inmate Appeals

II B 1